OPINION
{¶ 1} Defendant-appellant, James E. Craft, appeals his conviction in the Butler County Court of Common Pleas for aggravated murder. We affirm.
 {¶ 2} In the early evening hours of June 13, 1974, a teenage boy discovered the deceased body of 15-year-old Cynthia Beuerlein on the side of a road in Union Township, presently known as West Chester Township, Butler County, Ohio. Butler County law enforcement officials were contacted and responded to the scene immediately, where they *Page 2 
discovered the victim's body with apparent head injuries. The victim was found wearing pants that were pulled up to her waist but were unfastened, and wearing no panties and only one shoe. A matching shoe and a pair of blood-stained panties were discovered in the grass near the body.
 {¶ 3} An autopsy was later performed, indicating the victim died from multiple blows to the head from a blunt instrument, causing numerous severe cranial-cerebral injuries. There was also evidence of manual strangulation present on the victim's neck. No clear signs, either trauma to the external genital area or semen, were found demonstrating the victim had been sexually assaulted. Due to the severity of the victim's wounds, investigating officers concluded there was not enough blood present where the victim's body was discovered to indicate she had been killed at that location.
 {¶ 4} The day before her body was discovered, the victim had been in the company of her boyfriend, Charles Brown. The two spent the afternoon of June 12, 1974 together with friends at a local park, and later that evening, went to Brown's home to watch television. At approximately 11:00 p.m., the victim decided to hitchhike home, and the two departed Brown's home and proceeded to walk towards Route 4.
 {¶ 5} When they reached the four-lane highway of Route 4, Brown said goodbye to the victim and watched as she crossed to the west side of the highway in order to hitchhike southbound. Brown saw an older, dark-colored vehicle pull over and stop, and the driver of the vehicle reach to open the passenger's side door. The dome light of the vehicle illuminated and Brown saw the vehicle had only one occupant, the driver, who appeared to be male. Brown then saw the victim wave goodbye and get into the vehicle, and the vehicle proceed southbound. As the vehicle was pulling onto the road, Brown saw a light-colored, luxury-model vehicle with a number of young boys pull beside the car the victim had just entered. Brown had seen the vehicle pass moments earlier, traveling northbound, with the *Page 3 
boys "hooping and hollering" at the victim and yelling, "hey babe," as she crossed the street.
 {¶ 6} Butler County law enforcement officials proceeded to investigate the victim's murder in 1974, but with little success. The homicide became a "cold case" and remained unsolved until 2000, when Detective Frank Smith of the Butler County Sheriff's Office was assigned to reopen the case. While in the process of reviewing the original case file, Detective Smith came across a dispatch record from 1974 containing information appellant had called in to the sheriff's department, along with a memorandum from 1974 indicating that a "Big Jim," a nickname by which appellant was known, might have been responsible for the victim's death. Detective Smith decided to interview appellant. Following his investigation and a number of interviews with appellant, appellant was indicted for aggravated murder, in violation of R.C. 2903.01(B). The indictment alleged that appellant purposely caused the death of the Cynthia Beuerlein while committing or attempting to commit the offense of kidnapping.
 {¶ 7} On February 18, 2003, appellant entered a plea of not guilty by reason of insanity. The trial court originally found appellant competent to stand trial and scheduled a jury trial. After a series of continuances of the trial date, however, issues regarding appellant's competency were again raised by his trial counsel. Appellant underwent a psychological evaluation and was found incompetent to stand trial on May 23, 2005. The court ordered appellant to undergo treatment and transferred him to a treatment facility.
 {¶ 8} Months later, the court ordered a forensic evaluation of appellant and found him competent to stand trial on March 22, 2006. Appellant thereafter filed a written jury waiver, which the trial court accepted following a brief hearing on the matter prior to trial. The court then commenced a bench trial on May 16, 2006, at the conclusion of which it determined the state had proven the elements of the crime in question beyond a reasonable doubt, and found appellant guilty of aggravated murder. Appellant was later sentenced to a term of life *Page 4 
imprisonment, to be served consecutively with a prison term that had previously been imposed for an unrelated charge of involuntary manslaughter.
 {¶ 9} Appellant now appeals his conviction, raising five assignments of error.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "THE TRIAL COURT DID NOT HAVE JURISDICTION OVER [APPELLANT] FOR THE CRIME OF AGGRAVATED MURDER."
 {¶ 12} In his first assignment of error, appellant argues the trial court lacked subject-matter jurisdiction over his prosecution for aggravated murder where the state failed to prove the act causing the victim's death, the physical contact causing the victim's death, or the victim's death itself occurred in Ohio. We find this argument without merit.
 {¶ 13} Pursuant to R.C. 2901.11 (A)(1), "[a] person is subject to criminal prosecution and punishment in this state if * * * [t]he person commits an offense under the laws of this state, any element of which takes place in this state." R.C. 2901.11(B) specifically limits the jurisdictional grant of this section, however, for the offense of homicide: "In homicide, the element referred to in division (A)(1) of this section includes the act that causes death, the physical contact that causes death, the death itself, or any other element that is set forth in the offense in question. If any part of the body of a homicidevictim is found in this state, the death is presumed to have occurredwithin this state." (Emphasis added.) R.C. 2901.11(D) further provides that "[w]hen an offense is committed under the laws of this state, and it appears beyond a reasonable doubt that the offense or any element of the offense took place either in this state or in another jurisdiction or jurisdictions, but it cannot reasonably be determined in which it took place, the offense or element is conclusively presumed to havetaken place in this state for purposes of this section." (Emphasis added.)
 {¶ 14} Appellant argues the trial court lacked jurisdiction over his prosecution because there was no direct evidence presented at trial demonstrating the victim's death, or the act *Page 5 
causing her death, occurred in Ohio. Appellant further contends the presumption set forth R.C. 2901.11(B) was rebutted because investigating officers admitted "they had no way of determining where the death had occurred." Investigating officers indicated that there was not enough blood found at the scene where the victim's body was discovered to conclude the victim was killed at that location.
 {¶ 15} During appellant's trial, however, the state presented evidence indicating that the victim was last seen in Ohio less than 24 hours before her body was discovered. The state's witness, Charles Brown, testified that he last saw the victim at approximately 11:30 p.m., as the victim entered a vehicle traveling southbound on Route 4 in Butler County, Ohio. Appellant himself also admitted having seen the victim as he drove southbound on Route 4 on the night in question, immediately after he had gotten off of work at approximately 11:30 p.m. Appellant indicated that he even pulled to the side of the road to offer the victim a ride before allegedly changing his mind and driving away. The evidence indicates the victim's body was found the next day in the early evening hours on the side of a rural road in Butler County.
 {¶ 16} Significantly, appellant produced no evidence to rebut the statutory presumption that the murder occurred in Ohio. Despite appellant's argument to the contrary, the presumption set forth in R.C.2901.11(B) is not rebutted by investigating officers' acknowledgment that the location of death is unknown, but rather, arises in such instances where the body is found in Ohio. See, e.g., State v.Yarbrough, 104 Ohio St.3d 1, 2004 Ohio-6087. See, also, State v.Rydbom (Apr. 14, 1998), Washington App. No. 97CA16. Moreover, R.C.2901.11(D) establishes that the offense in question is conclusively presumed to have occurred in Ohio under the circumstances presented here, where the evidence indicates the offense took place either in Ohio or in another jurisdiction, but it cannot reasonably be determined in which location the offense took place. *Page 6 
 {¶ 17} Because appellant failed to rebut the foregoing statutory presumptions with any evidence indicating the victim's death occurred in a location other than Ohio, the location of death was conclusively established by the discovery of the victim's body in Butler County. Based upon the foregoing, we find the trial court properly exercised jurisdiction over appellant's prosecution in this case. Appellant's first assignment of error is therefore overruled.
 {¶ 18} Assignment of Error No. 2:
 {¶ 19} "THE TRIAL COURT ERRED TO THE PREJUDICE OF [APPELLANT] WHEN IT DID NOT CONDUCT A SUFFICIENT COLLOQUY WITH [APPELLANT] IN ORDER TO DETERMINE WHETHER HIS JURY WAIVER WAS KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY MADE."
 {¶ 20} In his second assignment of error, appellant argues the trial court erred in accepting his jury waiver without conducting a thorough exchange with him to ascertain his understanding of his right to a jury trial and the implications of waiving this right. Appellant contends his history of mental illness and the fact he had initially been found incompetent to stand trial in this case indicate the trial court should have engaged in a more in-depth dialogue with him prior to accepting his jury waiver. We disagree.
 {¶ 21} R.C. 2945.05 and Crim. R. 23 allow a defendant to waive his right to a jury trial. Such a waiver must be in writing, signed by the defendant and filed with the court, and must be made in open court after the defendant has been arraigned and has had an opportunity to consult with counsel. R.C. 2945.05. A jury waiver must be knowing, intelligent and voluntary, and "may not be presumed from a silent record." State v.Fitzpatrick, 102 Ohio St.3d 321, 2004-Ohio-3167, ¶ 37; Crim.R. 23. Where, however, "the record shows a jury waiver, the conviction will not be set aside except on a plain showing that the defendant's waiver was not freely and intelligently made." Fitzpatrick, citing Adams v. UnitedStates ex rel. McCann *Page 7 
(1942), 317 U.S. 269, 281, 63 S.Ct. 236. Significantly, "a written waiver is presumptively voluntary, knowing, and intelligent." Id., citing, United States v. Sammons (C.A.6, 1990), 918 F.2d 592, 597;State v. Bays, 87 Ohio St.3d 15, 19, 1999-Ohio-216.
 {¶ 22} It is well-established under Ohio law that a trial court is not required "to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial. The Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel." State v.Jells (1990), 53 Ohio St.3d 22, 25-26, citing State v. Morris (1982),8 Ohio App.3d 12, 14. "While it may be better practice for the trial judge to enumerate all the possible implications of a waiver of a jury, there is no error in failing to do so." Id.
 {¶ 23} The record indicates appellant executed a written jury waiver on May 16, 2006. The waiver is signed by appellant and his two trial attorneys. The record also indicates that prior to appellant's bench trial, the trial court conducted a hearing regarding appellant's jury waiver. During the hearing, the following exchange took place:
 {¶ 24} The court: "You have the right to a trial by jury of 12 people. And they hear the case and they cannot come back with a guilty verdict unless all 12 of them vote guilty. The burden is on the State of Ohio to prove each and every element of the offense beyond a reasonable doubt. Do you understand that?"
 {¶ 25} Appellant: "Uh-huh."
 {¶ 26} The court: "I have here a jury waiver. Did you read this?"
 {¶ 27} Appellant: "No, I didn't read it."
 {¶ 28} Appellant's trial counsel: "I read it to him, Judge."
 {¶ 29} The court: "All right (sic). Your attorney read this to you?"
 {¶ 30} Appellant: "Uh-huh." *Page 8 
 {¶ 31} The court: "Did you discuss this with your attorney?"
 {¶ 32} Appellant: "Yeah."
 {¶ 33} The court: "And this says your (sic) waiving your right to a jury trial and that means that I will be determining the facts in the case guilt (sic) or not guilty. Do you understand that?"
 {¶ 34} Appellant: "Yes."
 {¶ 35} The court: "Is that what you want to do, sir?"
 {¶ 36} Appellant: "Uh-huh."
 {¶ 37} Appellant's trial counsel: "Judge, can I add I met with [appellant] yesterday and went over the prior jury waiver that we filed. Indicated to him that it was likely that the Court would ask for a new jury waiver and the reasons why and in the room that I'm able to speak with him in private, I spent sometime (sic). Even though I do believe [appellant] has substantial psychology and psychiatric issues, I think he understood the nature of the jury waiver and understood the reasons why (sic) recommended the jury waiver. And I believe that it is his best intention to * * * do that and he's competent to make that decision at this time."
 {¶ 38} * * *
 {¶ 39} Appellant's trial co-counsel: "I concur that he understood the jury waiver."
 {¶ 40} * * *
 {¶ 41} The court: "Sir, the Court's going to allow you to waive your right to a jury * * *."
 {¶ 42} We find the foregoing exchange with defendant was sufficient to satisfy both the statutory and criminal rule requirements. As an initial matter, appellant was found competent to stand trial prior to his execution of the jury waiver. The Ohio Supreme Court has previously found a competency finding significant in determining whether a defendant's jury waiver was knowingly, intelligently and voluntarily entered. See State v. Ketterer, *Page 9 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 67. Accordingly, the fact appellant has a history of mental illness is insufficient to rebut the presumption that appellant's written jury waiver was knowing, intelligent and voluntary, where he was found competent to stand trial and, therefore, capable of making decisions concerning his defense.
 {¶ 43} Moreover, as stated, a court is not required to interrogate a defendant as to his understanding of the jury waiver and its implications, nor is the defendant required to have a thorough understanding of all possible consequences of the waiver. See id. at ¶ 68. The record demonstrates the trial court engaged in a sufficient dialogue with appellant to ascertain whether his jury waiver was knowing, intelligent and voluntary, and whether he had discussed the waiver with his attorneys prior to entering it. Significantly, the court further received assurances from both of appellant's trial attorneys that they had thoroughly discussed the jury waiver with appellant and, in their judgment, appellant understood the waiver.
 {¶ 44} Based upon the foregoing, we find no error in the trial court's finding that appellant knowingly, intelligently and voluntarily waived his right to a jury trial. Appellant's second assignment of error is therefore overruled.
 {¶ 45} Assignment of Error No. 3:
 {¶ 46} "THE TRIAL COURT ERRED TO THE PREJUDICE OF [APPELLANT] WHEN IT ADMITTED STATE'S EXHIBIT 4 INTO EVIDENCE."
 {¶ 47} In his third assignment of error, appellant argues the trial court erred in admitting into evidence an interdepartmental memorandum from the sheriff's office, detailing an anonymous tip received following the victim's murder in 1974. Appellant claims the statements contained in the document constitute inadmissible hearsay, and therefore, the trial court erred in admitting the document as an "ancient document." We find this assigned error without merit. *Page 10 
 {¶ 48} A trial court has broad discretion in the admission and exclusion of evidence and, absent a clear abuse of discretion, a reviewing court will not disturb the trial court's decision. State v. Sargent (1998),126 Ohio App.3d 557, 565, citing State v. Combs (1991),62 Ohio St.3d 278, 284; State v. Finnerty (1989), 45 Ohio St.3d 104, 109. An "abuse of discretion" connotes more than an error of law or judgment, and implies the court's attitude is unreasonable, arbitrary or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 49} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is not admissible as evidence unless the evidence falls under a specific exception to the hearsay prohibition. Evid.R. 802. The historic purpose of the hearsay rule is "to exclude statements of dubious reliability that cannot be tested by cross-examination." State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 70.
 {¶ 50} The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." With respect to hearsay, the United State Supreme Court has held that the Confrontation Clause prohibits the admission of a testimonial, out-of-court statement made by a witness unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. Crawford v.Washington (2004), 541 U.S. 36, 68, 124 S.Ct. 1354. The clause does not, however, "bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 59, fn.9, citingTennessee v. Street (1985), 471 U.S. 409, 414, 105 S.Ct. 2078.
 {¶ 51} Similarly, Ohio courts have repeatedly held that "extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed," rather than to prove the truth of the matter asserted. See State v.Thomas (1980), 61 Ohio St.2d 223, 232. For instance, where a statement made by *Page 11 
an individual to a law enforcement officer is offered to prove the officer's subsequent investigative activities, the statement does not constitute hearsay and is properly admissible. See id. See, also,State v. Washington, Cuyahoga App. No. 87688, 2006-Ohio-6027, ¶ 40-41.
 {¶ 52} The document at issue is an interdepartmental memorandum dated June 25, 1974, which details an anonymous tip received by an officer who was working on the case in 1974. The tip indicates that an individual known as "Big Jim" may have been responsible for the victim's murder. Appellant contends the trial court erroneously admitted the document as an "ancient document," and considered the information contained therein as substantive evidence of appellant's guilt. Our review of the record, however, yields no support for this assertion.
 {¶ 53} At trial, Detective Frank Smith testified that he began his investigation of the instant homicide in 2000 by familiarizing himself with the original case file from 1974, including the memorandum at issue, and thereafter conducted interviews of witnesses. The state questioned Detective Smith regarding the memorandum, at which point appellant's trial counsel objected to the admission of the document on the basis of hearsay. The state, however, advised that the document was not being offered for the truth of its contents, but rather, to demonstrate the investigative activities undertaken by Detective Smith after reading the document. Appellant's trial counsel argued to the court that if this was the purpose for the document's admission, the state should not be permitted to read the contents of the memorandum on the record.
 {¶ 54} The record indicates that in response to this dispute, the trial court specifically stated that it would "allow the two words Big Jim and for whatever value they have in explaining what was done next." Detective Smith proceeded to testify that in 1967, he worked at a job with appellant and was aware that appellant was called "Big Jim." As a result *Page 12 
he decided to interview appellant to determine whether he had any information concerning the case.
 {¶ 55} At the conclusion of the state's case-in-chief, however, the state argued the document was admissible pursuant to the "ancient document" exception to the hearsay rule, Evid.R. 803(16).[1]
Appellant's trial counsel objected to the admission of the document as an "ancient document" on the basis of hearsay, which objection the trial court overruled without explanation. During closing arguments, the state again indicated that exhibit 4 had been offered to demonstrate Detective Smith's investigative activities, rather than as substantive evidence of guilt.
 {¶ 56} Although the trial court did not state a rationale for overruling appellant's objection at the close of the state's case-in-chief, our review of the record indicates the trial court admitted the document for the purpose of explaining Detective Smith's investigative activities. When the document was first introduced by the state, the trial court indicated it would allow the words, "Big Jim," to illustrate Detective Smith's course of action during his investigation. The court later referenced the document with similar purpose in its written decision summarizing the evidence presented at trial. The decision states that Detective Smith "identified exhibit 4 which was a dispatch record from June 25, 1974 which contained a short statement from an anonymous caller that turned his attention to James Craft."
(Emphasis added.) There is no mention of the contents of the anonymous tip, nor is there any indication the trial court considered the tip as substantive evidence of appellant's guilt, anywhere in the decision.
 {¶ 57} As stated, a statement offered for the purpose of explaining an officer's *Page 13 
subsequent investigative activities does not constitute hearsay, and is properly admissible. See Thomas at 232. Because neither the memorandum itself nor the statements contained therein were offered for the truth of the matters asserted, but rather, to explain Detective Smith's investigative undertakings, neither constitutes hearsay. Because the document is not hearsay, the application of any exceptions to the hearsay rule, such as the ancient document exception, is therefore not required.
 {¶ 58} It is well-established that a trial court presiding over a criminal case is presumed to have considered evidence for its proper purpose, and "only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." State v. White (1968), 15 Ohio St.2d 146,151. See, also,Ketterer, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 130. Despite appellant's suggestion otherwise, the record indicates that the trial court admitted the document and considered it for the proper purpose of demonstrating Detective Smith's investigative activities. Accordingly, we find no abuse of discretion in the trial court's admission of the subject document. Appellant's third assignment of error is therefore overruled.
 {¶ 59} Assignment of Error No. 4:
 {¶ 60} "THERE WAS INSUFFICIENT EVIDENCE TO JUSTIFY A FINDING OF GUILT FOR AGGRAVATED MURDER."
 {¶ 61} In his fourth assignment of error, appellant challenges the sufficiency of the evidence supporting his conviction. We find this assigned error without merit.
 {¶ 62} In reviewing the sufficiency of the evidence to support a criminal conviction, a reviewing court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 273. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any *Page 14 
rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. Significantly, Ohio courts have "long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. McKnight,107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 75, quoting State v. Heinish (1990),50 Ohio St.3d 231, 238.
 {¶ 63} R.C. 2903.01(B) provides: "No person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape." The state alleges appellant purposely caused the death of the victim while committing or attempting to commit the offense of kidnapping. R.C. 2905.01(A)(4) provides: "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person," for the purpose of engaging "in sexual activity * * * with the victim against the victim's will * * *."[2]
 {¶ 64} Appellant argues there was insufficient evidence presented at trial to prove the elements of aggravated murder because appellant did not admit to the crime, there was no forensic evidence connecting him to the crime and there were no eye-witnesses to the events leading to the victim's death. Appellant further argues there was no direct evidence proving he kidnapped the victim, as alleged by the state.
 {¶ 65} Our review of the record, however, indicates that the state presented circumstantial evidence which, if believed by the trier of fact, was sufficient to support a *Page 15 
finding the state proved the elements of the offense in question beyond a reasonable doubt. As an initial matter, appellant was one of the first people to call the sheriff's department with information following the discovery of the victim's body in 1974. Appellant indicated to police at that time that he saw the victim hitchhiking on Route 4 and observed a dark, older-model vehicle pick her up. This evidence established that appellant was present at the scene and at the time where the victim was last seen alive.
 {¶ 66} When Detective Smith reopened the case in 2000, he came across a memorandum referencing an individual known as "Big Jim," whom he knew to be appellant, and began a series of interviews with appellant. During these interviews, appellant indicated to Detective Smith that he saw the victim on the night in question, and wanted to offer the victim a ride home but was afraid his wife would be angry. In one such interview, he indicated that he even pulled to the side of the road to offer the victim a ride home, but changed his mind and pulled back onto the road. Appellant stated that he saw the victim get pulled into a car with a number or boisterous boys, who yelled to him that they "saw her first," as he was pulling back onto the road.
 {¶ 67} Charles Brown, however, testified at trial indicating otherwise. Brown testified that he observed a dark, older-model, "rough" looking vehicle pull over, and the person inside of the vehicle reach across the seat to open the passenger's door. The dome light illuminated when the door opened, and Brown could see that only one person, the driver, who appeared to be male, was in the car. He saw the victim waive goodbye, get into the car, and the car proceed southbound.
 {¶ 68} Brown also testified that he saw a car full of boys traveling northbound on Route 4 in a newer, light-colored, luxury-model vehicle, and that the boys were "hooping and hollering," and yelling, "hey babe," to the victim as she crossed the street. Brown later saw the same vehicle come back and pull beside the older car that had just picked up the *Page 16 
victim. At trial, Brown recalled that he felt relieved the victim had gotten into the older car with one occupant, rather the car with the young, "preppy" boys. The trial court, as the trier of fact, was permitted to resolve the inconsistencies in these accounts, and to accord Brown's testimony greater weight and credibility in doing so. Such testimony, if believed, could support a finding that appellant picked up the victim as she attempted to hitchhike home, with the false pretense of safely transporting the victim to her home.
 {¶ 69} Additionally, although no physical evidence was presented demonstrating the victim had been sexually assaulted, appellant admitted he was impotent and could only engage in oral sex. Such activity would not necessarily yield physical evidence. Because the victim's body was discovered wearing pants that had been unfastened and no panties, and a pair of blood-stained panties was found near her body, the trier of fact could reasonably find appellant picked up the victim for the purpose of engaging in sexual activity with her.
 {¶ 70} Significantly, several witnesses testified at trial that appellant boasted about committing the murder. "Outlaw" motorcycle gang member, Russell Saylor, testified that appellant had stopped by a garage located behind appellant's place of employment following the discovery of the victim's body. When information regarding the murder came on the radio, appellant stated, "I off'd that bitch." Roger Dean Smith, Jr. also testified that while he was an inmate at Ross Correctional Facility in the 1990s, appellant told him and a number of other inmates that he "killed a whore in Hamilton." This statement was made during a conversation in which the inmates were discussing crimes they had "gotten away with."
 {¶ 71} In addition, appellant's adopted son, James Craft, Jr., testified that at the time of the victim's murder, appellant always carried a long, one and a half inch diameter pipe behind his seat in his car, which he called his "n beater." Evidence presented by the state indicated that the victim died from multiple blows caused by a heavy instrument, such *Page 17 
as a metal pipe. Detective Smith also indicated that metal shavings found near the victim's body were consistent with those that could be found at appellant's place of employment in 1974, Southwestern Ohio Steel.
 {¶ 72} We find the foregoing evidence, if believed by the trier of fact, could support a finding that appellant committed the charged offense beyond a reasonable doubt. Despite appellant's contentions otherwise, it is unnecessary that the state produce eye-witness testimony or physical evidence to establish guilt beyond a reasonably doubt, as circumstantial evidence is accorded equal weight and given the same deference as direct evidence. See supra ¶ 62, discussingMcKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 75. See, also,Jenks, 61 Ohio St.3d at 272. Accordingly, we find sufficient evidence was presented at trial to support appellant's conviction. Appellant's fourth assignment of error is therefore overruled.
 {¶ 73} Assignment of Error No. 5:
 {¶ 74} "[APPELLANT'S] CONVICTION FOR AGGRAVATED MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 75} In his final assignment of error, appellant argues his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 76} In reviewing the manifest weight of the evidence to determine whether reversal is warranted, "the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. An appellate court will not reverse a judgment as against the manifest weight *Page 18 
of the evidence unless it unanimously disagrees with the jury's resolution of any conflicting testimony. Id. at 389. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 77} As stated, the evidence presented at trial indicates that appellant was present at the scene where the victim was last seen on the night in question, at the time the victim was last seen alive. Appellant also admitted pulling to the side of the road to allow the victim in his vehicle and that the victim approached his vehicle before he allegedly changed his mind and pulled back onto the road. Although appellant claimed he saw the victim get into a vehicle with a number of rowdy boys, Brown indicated that he saw the victim get into a car with only one occupant who appeared to be male. Significantly, the state presented evidence indicating that appellant boasted to others following the discovery of the victim's body that he had committed the murder.
 {¶ 78} The evidence presented at trial indicated that the victim's body was discovered wearing pants that had been unfastened and no panties, and a pair of bloodstained panties was found near the body. Because appellant admitted he was impotent and could only engage in oral sex, physical evidence of which may not have been revealed by an autopsy, a reasonable inference could arise that appellant picked the victim up for the purpose of engaging in sexual activity with her.
 {¶ 79} Finally, we note that although appellant presented the testimony of psychologist, Dr. Bobbie Hopes, indicating that appellant has a history of mental illness and is highly "suggestible," the state presented substantial circumstantial evidence to prove the elements of the offense in question beyond a reasonable doubt. The trial court, as the trier of fact, was in a better position to judge the credibility of all witnesses and to resolve the *Page 19 
conflicts in the evidence presented at trial accordingly. Based upon our review of the evidence presented, we do not find that this is an "exceptional case in which the evidence weighs heavily against the conviction," or that the trial court lost its way or created a miscarriage of justice in convicting appellant on the aggravated murder charge. Thompkins at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Accordingly, we find the trial court's guilt finding was not against the manifest weight of the evidence presented. Appellant's fifth assignment of error is therefore overruled.
 {¶ 80} Judgment affirmed.
BRESSLER, P.J. and WALSH, J., concur.
[1] Evid.R. 803(16) provides as follows: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * Statements in ancient documents. Statements in a document in existence twenty years or more the authenticity of which is established."
[2] R.C. 2907.01(C) defines "sexual activity" as "sexual conduct or sexual contact, or both." R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." *Page 1