JOURNAL ENTRY AND OPINION
{¶ 1} Daisy Washington ("Washington") appeals from her conviction and sentence rendered in the Cuyahoga County Court of Common Pleas. Washington argues that the trial court admitted improper evidence during the trial, the State of Ohio ("Ohio") failed to present sufficient evidence to support her convictions, her convictions are against the manifest weight of the evidence, and the trial court erred when it ordered her to pay restitution. For the following reasons we affirm in part, reverse in part and remand.
 {¶ 2} This case arose from a theft that occurred at the Pleasant View Nursing Home located at 7377 Ridge Road in Parma, Ohio. On the morning of January 22, 2004, charge nurse Karen Hinkle ("Hinkle") noticed that during the delivery of breakfast to the residents of the nursing home, Sam Derrico ("Derrico") started yelling. Hinkle stated that Derrico was a resident of the nursing home, estimated him to be seventy-eight years old, and stated that he used a walker to move about. Hinkle spoke with Derrico, who was unusually upset, and Derrico told her that between seven and eight hundred dollars had been stolen from his room. When Hinkle asked who stole the money, Derrico told her that the woman who dropped off his breakfast tray stole the money.
 {¶ 3} Tammy Sprouse ("Sprouse") heard Derrico yelling and stated that he was very angry and she had never seen him like that before. Sprouse also stated that when Derrico began yelling, Washington was not present, but instead was in a nearby room with the door shut and locked. Sprouse told Hinkle, who knocked on the door and told Washington to come out. After Washington exited the room, Sprouse and Hinkle searched the room, but did not find the missing money.
 {¶ 4} Hinkle asked the three working employees, which included Washington and Sprouse, who had dropped off Derrico's breakfast tray. All three denied doing so and Washington stated that Derrico retrieved his own tray from the cart in the hallway. Hinkle told all three employees to empty their pockets; they complied, but none of the missing money was found. Hinkle told the employees that she was going to call the Parma Police Department to investigate the theft.
 {¶ 5} Sprouse stated that Washington was very nervous and began pacing the floor. Sprouse heard Washington yell to another employee to get her coat. After that, Sprouse saw Washington run down the stairs and outside to the parking lot. Sprouse told Hinkle and the two watched from the break room window as Washington opened the passenger side door of her vehicle, closed it, and returned to the nursing home. Hinkle stated that no member of the nursing staff is permitted to leave the floor. Additionally, all breaks and lunches are scheduled and no unauthorized breaks are permitted.
 {¶ 6} When Washington returned to the floor, Sprouse heard her on the telephone telling someone to meet her at Subway right away. Sprouse told Hinkle, who prevented Washington from leaving the nursing home.
 {¶ 7} Parma Police Officer Scott Brugge ("Officer Brugge") arrived at the nursing home to investigate the theft. Officer Brugge spoke with Hinkle and then Derrico. Officer Brugge stated that Derrico was eighty-five years old, and reported $780 missing in denominations of seven one-hundred-dollar bills, one fifty-dollar bill, one twenty-dollar bill, and one ten-dollar bill. Officer Brugge contacted his shift supervisor and requested the help of the detective bureau.
 {¶ 8} Captain Robert DeSimone ("Captain DeSimone") and Sergeant Mickey Adams ("Sergeant Adams") responded to the nursing home. Officer Brugge and Hinkle told Captain DeSimone and Sergeant Adams about the theft, the amount of money, that no money had been recovered, and about Washington's suspicious behavior as well as her brief exit from the building. Captain DeSimone brought Washington into the nursing supervisor's office to conduct an interview. Sergeant Adams was present in the room and Officer Brugge was also present at times. Before asking Washington any questions, Captain DeSimone read her the Miranda warnings off of a card that he kept in his wallet with his badge. Captain DeSimone stated that he always uses the card to read people their rights so that no person can later say that their rights were not read properly, or that parts were omitted. Washington stated that she understood her rights and agreed to speak with the police.
 {¶ 9} Washington told the police that she had not gone into Derrico's room that morning and had left his tray in the hallway. She denied taking the money and also denied leaving the building. Washington continued to deny taking the money but, after repeated questioning by Captain DeSimone, admitted to the theft. She stated that she did not know exactly how much money she had stolen, and that she had placed the money in her car.
 {¶ 10} Captain DeSimone requested to search Washington's car and she agreed. Washington signed a consent to search form but limited the officers' search to the missing money. Washington also stated that she would allow the search, but only if Sergeant Adams accompanied her to her car. Captain DeSimone agreed and he and Officer Brugge went to the break room window to watch the search.
 {¶ 11} As they were walking to Washington's 1999 Kia Sportage, Sergeant Adams asked her exactly where the money was. Washington told him that it was between the seat cushions of the rear seat. Sergeant Adams opened the right, rear passenger door and watched as Washington leaned in and placed her left hand in between the seat cushions. Washington suddenly moved her right hand into the rear cargo area of the car and began reaching for a bag. Sergeant Adams became concerned for his safety and demanded that she stop. Washington told him that the money was in the bag. Washington pulled the bag out of the car and set it on the ground. Sergeant Adams stated that the bag and Washington's right hand shielded her left hand, which was underneath the frame portion of the vehicle. Sergeant Adams opened the bag but did not recover the money. Washington then changed her story and stated that she did not take the money and that there was never any money in her car.
 {¶ 12} From the break room window, Sprouse, who was watching the search with Hinkle and the officers, stated that she saw Washington kick money underneath the car. Sergeant Adams motioned for Captain DeSimone and Officer Brugge to come down to the parking lot. The officers placed Washington under arrest and called for a tow truck so that they could transport the vehicle to the impound lot.
 {¶ 13} At that point, a passerby approached Officer Brugge and handed over a one-hundred dollar bill that was found blowing around the parking lot. The officers began searching the parking lot and eventually recovered $420. Officers transported Washington to the Parma Police Station, where she refused to make a written statement and asked to speak with a lawyer.
 {¶ 14} The Cuyahoga County Grand Jury returned an indictment, charging Washington with theft with an elderly specification and tampering with evidence.[1] Before trial, Washington's counsel moved to suppress her oral statements. The trial court conducted an evidentiary hearing and denied the motion. At the close of the State's case, Washington's counsel moved for a Crim.R. 29 judgment of acquittal. The trial court granted the motion as to the value of the money. The trial court reasoned that because police recovered only $420 from the theft and there was no other evidence of the exact amount of money stolen, the value of the theft would have to be less than $500. The indictment charged Washington with theft of more than $500 but less than $5,000.
 {¶ 15} On November 18, 2005, the jury found Washington guilty of theft with an elderly specification and tampering with evidence. The trial court sentenced Washington to five years of community controlled sanctions and ordered her to pay $360 in restitution. Washington appeals, raising the five assignments of error contained in the appendix to this opinion.
 {¶ 16} In her first assignment of error, Washington argues that the trial court erred when it denied her motion to suppress. This assignment of error lacks merit.
 {¶ 17} Our Ohio Supreme Court enunciated the standard of review of a motion to suppress in State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372.
"Appellate review of a motion to suppress presents a mixedquestion of law and fact. When considering a motion to suppress,the trial court assumes the role of trier of fact and istherefore in the best position to resolve factual questions andevaluate the credibility of witnesses. Consequently, an appellatecourt must accept the trial court's findings of fact if they aresupported by competent, credible evidence.
 Accepting these facts as true, the appellate court must thenindependently determine, without deference to the conclusion ofthe trial court, whether the facts satisfy the applicable legalstandard. (Citations omitted.)"
 {¶ 18} We therefore must consider whether the facts in the instant case demonstrate compliance with Miranda v. Arizona
(1966), 384 U.S. 436 under a de novo review.
 {¶ 19} Here, a review of the record demonstrates that competent, credible evidence supports the trial court's finding that the police provided Washington with the warnings required byMiranda. At the suppression hearing Captain DeSimone testified that prior to asking any questions, he advised Washington of her constitutional rights. Washington stated that she understood her rights and agreed to speak with Captain DeSimone. Additionally, Sergeant Adams also testified that he was in the room and heard Captain DeSimone advise Washington of her constitutional rights.
 {¶ 20} However, in spite of the foregoing testimony, Washington argues that the card Captain DeSimone used to advise Washington of her rights may have been inaccurate and therefore, her rights may not have been properly read. This argument is unpersuasive.
"There is no rigid rule requiring that the content ofMiranda warnings given to an accused prior to policeinterrogations be a `virtual incantation of the precise languagecontained in the Miranda opinion.' Rather, the requirementsof Miranda are satisfied where, prior to the initiation ofquestioning, the police fully apprise the suspect of the State'sintention to use his statements to secure a conviction, andinform him of his rights to remain silent and to have counselpresent if he so desires. (Citations omitted)." State v.Williams, Cuyahoga App. No. 82094, 2003-Ohio-4811.
 {¶ 21} In the present case, two police officers testified that Washington was fully advised of her constitutional rights and that Captain DeSimone read these rights from a standard card containing the Miranda rights. Under the totality of the circumstances, we conclude that the testimony by the police officers constitutes competent, credible evidence to support the trial court's finding that Captain DeSimone properly administered Washington's Miranda rights. Having been properly advised of her rights, Washington knowingly, intelligently, and voluntarily waived them and willingly provided her statement to the police.
 {¶ 22} Accordingly, Washington's first assignment of error is overruled.
 {¶ 23} In her second assignment of error, Washington argues that the State failed to present sufficient evidence to support her convictions for theft with an elderly specification and tampering with evidence. In her fourth assignment of error, Washington argues that her convictions are against the manifest weight of the evidence. Although these arguments involve different standards of review, we will consider them together because we find the evidence in the record applies equally to both.
 {¶ 24} The standard of review with regard to the sufficiency of the evidence is set forth in State v. Bridgeman (1978),55 Ohio St.2d 261, as follows:
"Pursuant to Crim.R. 29(A), a court shall not order an entryof judgment of acquittal if the evidence is such that reasonableminds can reach different conclusions as to whether each materialelement of a crime has been proved beyond a reasonable doubt."
 {¶ 25} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence admitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt." (Citation omitted.)
 {¶ 26} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of thegreater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.'
 * * * `The court, reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof witnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction.'"
Id. at 387. (Internal Citations Omitted.)
 {¶ 27} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. State v. DeHass (1967),10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether a new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey, 87 Ohio St.3d 479,483, 2000-Ohio-465. (Internal citation omitted.)
 {¶ 28} The jury found Washington guilty of theft, which pursuant to R.C. 2913.02 provides as follows:
"No person, with purpose to deprive the owner of property orservices, shall knowingly obtain or exert control over either theproperty or services * * * without the consent of the owner orperson authorized to give consent."
 {¶ 29} The jury found Washington guilty of an elderly specification, which pursuant to R.C. 2913.01(CC) provides as follows:
"`Elderly person' means a person who is sixty-five years ofage or older."
 {¶ 30} The jury also found Washington guilty of tampering with evidence, which pursuant to R.C. 2921.12 provides as follows:
"No person, knowing that an official proceeding orinvestigation is in process, or is about to be or likely beinstituted, shall * * * alter, destroy, conceal, or remove anyrecord, document, or thing, with purpose to impair its value oravailability as evidence in such proceeding or investigation."
 {¶ 31} In support of its case, the State presented the following evidence: staff members at the nursing home knew Derrico to possess large amounts of cash; Derrico told Hinkle that $780 was taken from him by the woman who dropped off his breakfast tray; Derrico was at least seventy-eight years old; Washington took an unauthorized break, left the building, and went to her car; Washington admitted to taking the money to Parma police officers; Washington was not free to go after she admitted to the theft; Washington consented to a search of her vehicle, Washington placed her left hand in between the seats of her vehicle, but then reached into the backseat with her right hand to remove a canvas bag; Washington used the bag to conceal her left hand, which she placed underneath the frame of her car; Sprouse observed Washington kick money underneath her car; police officers recovered four one-hundred dollar bills and one twenty-dollar bill scattered in the parking lot.
 {¶ 32} In response, Washington argues that the State failed to prove Derrico was sixty-five years or older, and that the State used mere speculation to prove that she committed the crimes of theft and tampering with evidence. We disagree.
 {¶ 33} Hinkle testified that Derrico was approximately seventy-eight years old and Officer Brugge stated that he was eighty-five years old. Even though the State did not provide Derrico's exact age, a reasonable trier of fact could conclude, based on this testimony, that he was over the age of sixty five.
 {¶ 34} Additionally, the State relied on more than mere speculation when it presented its case against Washington. Not only did Washington admit to taking Derrico's money, Sprouse observed her kicking money underneath her car, money that the police officers later recovered scattered around the parking lot.
 {¶ 35} Viewing this evidence in the light most favorable to the prosecution, we conclude that a reasonable trier of fact could have found all of the elements of theft with an elderly specification and tampering with evidence. Accordingly, we find that the State presented sufficient evidence to support Washington's convictions.
 {¶ 36} We further find that the trier of fact did not lose its way in convicting Washington. Though she argues that there was no evidence that she committed a theft or tampered with evidence, Washington disregards her own admission of guilt and the fact that Sprouse observed her kick money underneath her vehicle. As the reviewing court, we find that the trier of fact could reasonably conclude from the substantial evidence presented by the State, that the State proved the offenses beyond a reasonable doubt. Accordingly, we conclude that the trier of fact did not lose its way and create such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.
 {¶ 37} Based on the abovementioned reasons, we overrule Washington's second and fourth assignments of error.
 {¶ 38} In her third assignment of error, Washington argues that the trial court erred when it admitted inadmissible hearsay evidence during trial. Washington does not specify which witnesses' testimony she finds error with, she merely claims that Derrico's statement that a theft occurred was improperly admitted through several State's witnesses. This assignment of error lacks merit.
 {¶ 39} We apply an abuse of discretion standard to review questions regarding the admissibility or exclusion of evidence.State v. Hamilton, Cuyahoga App. No. 86520, 2006-Ohio-1949. "An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217. Accordingly, absent an abuse of that discretion, the trial court's rulings will not be reversed. Harmon v.Baldwin, 107 Ohio St.3d 232, 2005-Ohio-6264.
 {¶ 40} "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). In the present case, the testimony that a theft occurred was part of a long line of questioning in which the prosecutor elicited from witnesses information regarding the course of the investigation and why the witnesses chose to take the actions they did. The answers given in this type of questioning are not hearsay, because the witnesses did not give this information for the truth of the matter asserted, that is, to show that a theft occurred.
 {¶ 41} In a similar case, the Ohio Supreme Court held that "[t]he testimony at issue was offered to explain the subsequent investigative activities of the witnesses. It was not offered to prove the truth of the matter asserted. It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed. * * * The testimony was properly admitted for this purpose." (Citations omitted). State v.Thomas (1980), 61 Ohio St.2d 223; State v. Byrd, Cuyahoga App. No. 82145, 2003-Ohio-3958.
 {¶ 42} We find that the witnesses' testimony did not constitute impermissible hearsay. We therefore overrule Washington's third assignment of error.
 {¶ 43} In her fifth and final assignment of error, Washington argues that the trial court erred and abused its discretion when it ordered restitution. In this assigned error, Washington argues that the trial court granted her Crim.R. 29 judgment of acquittal valuing the theft at less than $500. Additionally, the police officers recovered $420 from the Pleasant View Nursing Home parking lot. Therefore, the trial court's order of $360 is above the value of the theft for which she was convicted. We agree.
 {¶ 44} A sentence of restitution must be limited to the actual economic loss caused by the illegal conduct for which the defendant was convicted. State v. Warner (1990), 55 Ohio St.3d 31;State v. Rivera, Cuyahoga App. No. 84379, 2004-Ohio-6648. "Thus, restitution can be ordered only for those acts that constitute the crime for which the defendant was convicted and sentenced." Rivera, supra. Accordingly, a trial court abuses its discretion when it orders restitution in an amount that has not been determined to bear a reasonable relationship to the actual loss suffered as a result of the defendant's offense for which she was convicted. State v. Williams (1986),34 Ohio App.3d 33; Rivera, supra.
 {¶ 45} The trial court submitted the theft charge to the jury with a value of less than $500. Accordingly, because the Parma Police Officers previously recovered $420, the trial court erred when it ordered Washington to pay $360. By doing so, the trial court effectively set the amount of the theft at $780, an amount for which Washington was not convicted.
 {¶ 46} Washington's fifth assignment of error is sustained. We reverse the trial court's restitution order and remand for a new hearing to determine the new amount of restitution.
 {¶ 47} We affirm the judgment of conviction but reverse the trial court's restitution order. This case is remanded for further proceedings.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, J., Concurs McMonagle J., Dissents.
[1] The victim passed away before the trial began.