JOURNAL ENTRY AND OPINION
{¶ 1} In this consolidated appeal, appellants "mother" and "greatgrandfather"[1] appeal the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, that awarded permanent custody of mother's minor child ("child") to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons stated herein, we affirm.
 {¶ 2} The child was born on April 2, 2006. At the time of the child's birth, the mother was fifteen years old, was in the custody of CCDCFS, and was a resident of Parmadale because of mental health and substance abuse issues.
 {¶ 3} Upon the child's birth, CCDCFS filed a complaint for dependency and temporary custody. CCDCFS was granted emergency temporary custody of the child on April 4, 2006. CCDCFS placed the child in foster care.
 {¶ 4} On January 5, 2007, CCDCFS filed a motion to modify temporary custody to legal custody to the child's great-grandparents. This motion was withdrawn on January 11, 2007, after the great-grandparents returned the child to foster care.
 {¶ 5} Thereafter, on March 12, 2007, CCDCFS filed a motion to modify temporary custody to permanent custody. The great-grandfather filed a motion *Page 5 
for legal custody on January 8, 2008. The child's great-grandmother did not join in this motion.
 {¶ 6} A permanent custody hearing was held on February 13, 2008. The testimony and evidence at the hearing revealed the following pertinent facts.
 {¶ 7} The mother was a resident at Parmadale and had been diagnosed with bipolar and conduct disorder. She also had a history of exhibiting aggressive behavior while in treatment facilities. Her case plan objectives focused on mental health, substance abuse, parenting, and educational issues. She had failed to complete any of these objectives as of the date of the hearing. Additionally, she had no source of financial support and acknowledged that she was not ready to leave treatment. The alleged father of the child did not establish paternity and had not visited with the child.
 {¶ 8} The child had been in the care of a foster parent since birth. The child had bonded with the foster family, which included a mother and her two children. The foster parent provided an appropriate home for the child and wished to adopt her. She also provided open visitation to the great-grandparents. However, the foster parent stated that there were months that had gone by when they did not visit. She also stated that the child would cry when the great-grandfather picked up the child for visits. *Page 6 
 {¶ 9} The great-grandparents also provided an appropriate home environment for the child. However, they did not seek legal custody of child until she was nearly two years old. Only the great-grandfather filed the motion for legal custody. The great-grandmother was not a party to the motion, and has not appealed the trial court's ruling in favor of CCDCFS.
 {¶ 10} The great-grandparents had an extended visitation with mother and child in late December/early January 2007. This was an attempt to unify the mother and the child, place the mother back with her grandparents (the great-grandparents), and give legal custody of the child to the great-grandparents. It was around this time that CCDCFS filed a motion to modify temporary custody to legal custody to the child's great-grandparents. CCDCFS intended for the placement of the child with her great-grandparents to continue up until legal custody was awarded.
 {¶ 11} During the visitation, the mother went "AWOL," and the child was returned to the foster home. The great-grandmother informed the foster parent that she did not want to raise any more children and, at one point, asked the foster parent if she would adopt the child.
 {¶ 12} The great-grandmother also informed the CCDCFS social worker that she did not want to keep the child anymore. Neither of the great-grandparents expressed an interest in keeping the child, even though CCDCFS *Page 7 
would have allowed that to occur. It was the social worker's understanding that the great-grandmother was not willing to take legal custody of the child and that she was comfortable having the child live in the foster home and the great-grandparents having visitation. Because of this, the motion of CCDCFS to award legal custody to the great-grandparents was withdrawn.
 {¶ 13} The trial court asked the social worker what she thought if the great-grandparents, as of the date of the hearing, wished to take custody of the child. The social worker responded that she did not know if it would be in the child's best interest because of the length of time the child had been with the foster family.
 {¶ 14} The great-grandfather testified that he is a pastor and that he has a very religious, happy home. He denied that the child would cry when he picked her up for visits and stated that the child has a good time during visits. His testimony revealed that he could provide an appropriate home for the child and appropriate care. He also testified that the great-grandmother was working every day.
 {¶ 15} With respect to returning the child to the foster parent after the visit in January 2007, the great-grandfather stated that he was not trying to get the child at the time, that his goal was to put the child with her mother and keep his family together, and that he was not aware of the motion to award him legal *Page 8 
custody that was pending at the time. However, both great-grandparents had
signed a statement of understanding for legal custody in December 2006, expressing their intent to become the legal custodians of the child. The CCDCFS social worker testified that she reviewed this document with the great-grandparents before they signed it.
 {¶ 16} The great-grandfather stated the reason he returned the child to the foster parent was because when the mother left "chaos broke out" and he was occupied with his attempts to locate the mother. He further testified that there were many times that the mother would leave and he would find her. After he found the mother, he did not seek to get the child back, and instead "just kept my visitation going." It appears from the record that it was the permanence of custody being awarded to CCDCFS that caused the great-grandfather to seek custody.
 {¶ 17} Following the hearing, the trial court granted CCDCFS permanent custody of the child and overruled the great-grandfather's motion for legal custody. The mother and the great-grandfather appealed the ruling of the trial court.
 {¶ 18} The mother raises two assignments of error for our review that provide as follows: *Page 9 
 {¶ 19} "I. [CCDCFS] failed to show by clear and convincing evidence that permanent custody is in the minor child's best interests."
 {¶ 20} "II. [CCDCFS] failed to comply with [R.C.] 2151.412(G) in that the child was not placed in the legal custody of suitable family members."
 {¶ 21} Under these assignments of error, the mother argues that the great-grandparents were willing to take legal custody of the child, that the evidence showed that the great-grandparents would be suitable as legal custodians to the child and that a bond existed between them, that the trial court failed to consider whether granting legal custody to the great-grandparents was a viable alternative to permanent custody, and that the child should have been placed in the legal custody of the great-grandparents pursuant to R.C. 2151.412(G).
 {¶ 22} The great-grandfather raises one assignment of error for our review that provides as follows:
 {¶ 23} "[I.] The juvenile court committed error to the prejudice of the [greatgrandfather]-appellant contrary to the manifest weight of the evidence when it granted [CCDCFS's] motion for permanent custody and committed subject child to the permanent custody of CCDCFS."
 {¶ 24} The great-grandfather argues that permanent custody should be a last resort, that R.C. 2151.412(G)(2) places suitable family members in a paramount position to foster placement, and that the great-grandfather is a *Page 10 
suitable relative who has bonded with the child and desires to have legal custody of her.
 {¶ 25} As the above assignments of error and arguments are interrelated, we shall address them together.
 {¶ 26} In order to terminate parental rights and grant permanent custody to a county agency, the record must demonstrate by clear and convincing evidence the existence of one of the conditions set forth in R.C. 2151.414(B)(1)(a)-(d) and that permanent custody is in the best interest of the child, by considering the five factors set forth in R.C. 2151.414(D). Clear and convincing evidence is that quantum of evidence which instills in the trier of fact a firm belief or conviction as to the allegations sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, 477. Our review of the weight of the evidence in a permanent custody case is limited to whether competent, credible evidence exists to support the trial court's factual determinations.In re Starkey, 150 Ohio App.3d 612, 2002-Ohio-6892.
 {¶ 27} As relates to this appeal, R.C. 2151.414(B)(1)(d) focuses on whether the child has "been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." It is undisputed that this requirement was met. Indeed, the child had been in CCDCFS custody from the *Page 11 
day after her birth through the time the trial concluded. The trial court further determined that child could not or should not be placed with her parents within a reasonable time.
 {¶ 28} Next, the trial court was required to determine, by clear and convincing evidence, that permanent custody is in the best interest of the child by considering all the relevant factors, including, but not limited to, the five factors set forth in R.C. 2151.414(D). Those factors include the following: (1) the interaction and interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply. R.C. 2151.414(D). This court has consistently found that only one of the enumerated factors needs to be resolved in favor of the award of permanent custody. In re Moore (Aug. 31, 2000), Cuyahoga App. No. 76942, citing In re Shaeffer Children (1993), 85 Ohio App.3d 683; see, also,In re M.Z., Cuyahoga App. No. 80799, 2002-Ohio-6634.
 {¶ 29} The record demonstrates that the trial court considered all the applicable factors and that its award of permanent custody to CCDCFS was supported by clear and convincing evidence. The trial court considered the custodial history of the child, who had been in the temporary custody of *Page 12 
CCDCFS since the day after she was born. The trial court found that the mother had failed to remedy the conditions that caused the child to be placed outside the home, that the mother's condition was so severe that it made her unable to provide a permanent home for the child at the present time or, as anticipated, within one year, and that the mother had demonstrated a lack of commitment toward the child.
 {¶ 30} The trial court further considered that CCDCFS had made reasonable efforts to prevent removal of the child from her home or to make it possible to return the child to her home. Nevertheless, the trial court found that the child could not be placed with relatives, as they were unable to provide care for the child and the child's return to the home would be contrary to the child's interests and welfare.
 {¶ 31} Our review reflects that CCDCFS attempted to place the child with the great-grandparents and even filed a motion to have legal custody awarded to them. However, during the visit "chaos broke out," and the child was returned to the foster mother. The great-grandparents did not make any attempts to have the child returned to them until CCDCFS filed its motion for permanent custody. Further, the great-grandmother had previously expressed that she did not want legal custody of the child, and she did not join in the motion for legal custody or in this appeal. *Page 13 
 {¶ 32} The mother and the great-grandfather both argue that legal custody should have been awarded to the great-grandfather pursuant to R.C. 2151.412(G) since he desired legal custody and was a suitable relative. It has been held that the language in R.C. 2151.412 is precatory rather than mandatory, and that the statute sets out general, discretionary guidelines for the court to consider when reviewing CCDCFS's development of case and reunification plans for each concerned party, and the court is not obligated to follow them. See, e.g., In reHalstead, Columbiana App. No. 04CO37, 2005-Ohio-403. R.C. 2151.412(G)(2) "does not grant any substantive rights to any extended family member concerning the potential placement of a child." In re Harris (Nov. 2, 2000), Cuyahoga App. No. 76631. Additionally, a trial court "is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody." In re Dylan B., Stark App. No. 2007-CA-00362, 2008-Ohio-2283.
 {¶ 33} In this case, CCDCFS attempted to apply the guidelines set forth in R.C. 2151.412 by attempting to unify the family and place the child with the great-grandparents during the period of temporary custody. However, this attempt failed, and the child was returned to CCDCFS. Insofar as greatgrandfather ultimately filed for legal custody, this was after the child had been with the foster mother for nearly two years and had established a close bond *Page 14 
with the foster family. Also, the great-grandmother did not join in the motion, and the great-grandparents had demonstrated an inability to care for the child when "chaos broke out" in their home.
 {¶ 34} The record is replete with evidence that due consideration was given by CCDCFS to placement with a relative and that CCDCFS concluded that placement with the great-grandparents was not in the child's best interest. The CCDCFS social worker questioned whether placement with the great-grandparents would be in the child's best interest because of the length of time the child had been with the foster family.
 {¶ 35} Insofar as the great-grandfather states that he has a positive relationship with the child, this court has previously stated: "the mere existence of a good relationship is insufficient. Overall, we are concerned with the best interest of the child, not the mere existence of a relationship." In re R.N., Cuyahoga App. No. 83121, 2004-Ohio-2560, citing In re Holyak (July 12, 2001), Cuyahoga App. No. 78890; see R.C. 2151.414(D)(1).
 {¶ 36} Upon our review, we find the record reflects competent and credible evidence which supports the juvenile court's determination that permanent custody is in the best interest of the minor child. Accordingly, we overrule all of the assigned errors.
 Judgment affirmed. *Page 15 
It is ordered that appellee recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding nondisclosure of identities in juvenile cases. *Page 1