[Cite as *In re M.B.*, 2011-Ohio-4645.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 96724

## IN RE: M.B.

## A Minor Child

**(Appeal by Mother)**

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 10918109

**BEFORE:** S. Gallagher, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** September 15, 2011

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, Ohio    44116


**ATTORNEYS FOR APPELLEE, STATE OF OHIO**

William D. Mason
Cuyahoga County Prosecutor

BY: Janna R. Steinruck
Assistant Prosecuting Attorney
C.C.D.C.F.S.
3955 Euclid Avenue
Cleveland, Ohio 44115


**GUARDIAN AD LITEM**

Carla Golubovic
P.O. Box 29127
Parma, Ohio 44129

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant mother appeals the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, to award permanent custody of her child, M.B.,[1] to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). Finding no error in the proceedings below, we affirm.

{¶ 2} Mother gave birth to M.B. on September 8, 2008. She has nine children. Five of her children were or are in the permanent custody of CCDCFS, and the other three are in the legal custody of their biological father. Before M.B.'s birth, during mother's first or second trimester, she tested positive for cocaine and CCDCFS received a referral. CCDCFS assigned Regina Quigley with the START unit to the case. The START unit provides weekly, specialized services for mothers who test positive for alcohol or drugs during their pregnancies. After M.B.'s birth, mother and child entered an inpatient substance abuse treatment program. Mother was discharged because of health reasons.

{¶ 3} Shortly thereafter, mother relapsed on cocaine and entered a second inpatient treatment program. During the second treatment program in January 2009, mother was convicted on drug and prostitution charges and sentenced to six months of incarceration. Upon being released, mother lived with her brother for six to seven months.

---

[1]The parties are referred to by their title or initials in accordance with this court's established policy regarding nondisclosure of identities in juvenile cases.

{¶ 4} In July 2009, CCDCFS received another referral for mother's continued drug use, and the agency sought protective supervision over M.B. In October 2009, the juvenile court adjudicated M.B. to be a dependent child and granted CCDCFS protective supervision. Mother was then under court order to participate in substance abuse treatment, parenting education, and mental health treatment. As of March 2010, mother failed to engage any such services. In June 2010, mother finally entered her third substance abuse treatment program; however, she failed to complete the program because of another relapse on cocaine. After this July 2010 relapse, mother sought treatment for a brain aneurysm, necessitating hospitalization between July and August 2010.

{¶ 5} After the surgery, mother was admitted to a nursing home for rehabilitation. She discharged herself. Mother's brother ("brother") helped care for M.B. During this time, CCDCFS was concerned about M.B.'s developmental delays. M.B. was ultimately diagnosed with autism and pica, a condition stemming from lead poisoning: the former diagnosis occurring in August 2010 and the latter in September 2010. CCDCFS conceded that brother met M.B.'s basic needs at this time. However, Help Me Grow, an organization that assists children with developmental delays, became involved with M.B. because of the diagnoses. Help Me Grow suggested that M.B. should participate in occupational, physical, and speech therapy. Brother failed to ensure that M.B. attended the additional appointments. In September 2010, mother was again arrested on drug charges.

{¶ 6} CCDCFS was granted emergency temporary custody of M.B. on September 29, 2010. There were growing concerns that brother had an alcohol or substance abuse problem. Having no appropriate relatives available, M.B. was placed in foster care. The second foster family to care for M.B. was licensed to care for special needs children. M.B. appears to be adjusting well with the foster family, which includes another child with whom M.B. appears to connect.

{¶ 7} Mother's case plan objectives were to receive mental and substance abuse treatment, receive parenting education, and obtain housing. Mother failed to complete any drug treatment program through the date of the dispositional hearing, which took place in March 2011, although she started to seek new treatments. Mother also was diagnosed with anxiety, post-traumatic stress disorder, and depression. While she acknowledges that she consistently failed to follow her mental health doctor's recommendation, as of the dispositional hearing she made efforts to reconnect with her mental health counselor and re-enroll in treatment programs.

{¶ 8} Mother was also aware of M.B.'s developmental needs and understood the corresponding, higher level of care needed to address these concerns. Neither CCDCFS nor Help Me Grow representatives thought that mother would be able to provide the level of care needed to address M.B.'s needs. While mother relied on brother for support, CCDCFS grew concerned that brother was also using drugs or alcohol. The guardian ad litem assigned to

represent M.B.'s interests felt that it was in the child's best interest to grant permanent custody to CCDCFS because of mother's inability to break her pattern of substance abuse and her bleak history with CCDCFS involving her eight other children.

{¶ 9}  After hearing all the evidence and arguments presented at the adjudicatory and dispositional hearings, the juvenile court terminated mother's and father's parental rights and granted CCDCFS permanent custody of M.B.   It is from this decision that mother[2] timely appeals, raising two assignments of error.   We will address each in turn.

{¶ 10} Mother's first assignment of error provides as follows:   "The trial court erred by adjudicating the child neglected and dependent and by awarding permanent custody to CCDCFS based on improperly admitted hearsay evidence."   Mother challenges on hearsay grounds the admissibility of statements made by the representatives from CCDCFS and Help Me Grow that doctors diagnosed M.B. with autism and pica.   Mother's first assignment of error is without merit.

{¶ 11} The admission of evidence lies within the broad discretion of the trial court. *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 239, 2005-Ohio-4787, 834 N.E.2d 323. A reviewing court will uphold an evidentiary decision absent an abuse of discretion that has affected the substantial rights of the adverse party or is inconsistent with substantial justice. Id.   We note that not only did mother fail to object to the admission of the diagnoses, but also

---

[2]While M.B.'s putative father was a party in the underlying action, he never filed an appeal or

she testified to the fact that M.B. was indeed diagnosed with autism and pica. Nevertheless, the trial court did not err by allowing the testimony.

{¶ 12} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." *State v. Washington*, Cuyahoga App. No. 87688, 2006-Ohio-6027, ¶ 41, citing *State v. Thomas* (1980), 61 Ohio St.2d 223, 400 N.E.2d 401.

{¶ 13} In this case, the representatives for CCDCFS and Help Me Grow and mother herself acted on the diagnoses and created a specialized plan for M.B. to follow. The evidence that the doctors diagnosed M.B. with autism and pica was not admitted for the truth of the matter asserted. Rather, it was admitted to explain CCDCFS's and Help Me Grow's actions in setting up a case plan for M.B. It is irrelevant whether the diagnoses are actually correct. The fact remains that both agencies believed they had to treat M.B. differently because of the diagnoses. Whether the diagnoses are correct is a completely separate matter, one not raised by mother at the juvenile court level and therefore beyond the scope of this appeal. The trial court did not, therefore, err in admitting the non-hearsay statements, and mother's first assignment of error is overruled.

---

contested CCDCFS's motion for permanent custody.

{¶ 14} Mother's second assignment of error provides as follows: "The trial court abused its discretion in awarding permanent custody to CCDCFS because the award is against the manifest weight of the evidence and is not supported by clear and convincing evidence." The second assignment of error is without merit.

{¶ 15} A court is required to grant permanent custody of a child to CCDCFS if, by clear and convincing evidence, it determines, based on a two-prong test, that (1) one of the conditions set out in R.C. 2151.414(B)(1)(a)-(d) exists and (2) the granting of permanent custody to the agency is in the best interest of the child based on the statutory factors in R.C. 2151.414(D). *In re A.M.*, Cuyahoga App. Nos. 91173 and 91218, 2008-Ohio-4454, ¶ 26. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 120 N.E.2d 118. Our review is limited to whether competent, credible evidence exists to support the juvenile court's factual determinations. *In re A.M.*, 2008-Ohio-4454, ¶ 26.

{¶ 16} As it relates to the current case, R.C. 2151.414(B)(1)(a) focuses on whether "[t]he child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more

months of a consecutive twenty-two-month period * * *." R.C. 2151.414(E). If the juvenile court determines this particular condition exists under the first prong, the court next must determine whether the child can be placed with either parent within a reasonable time or should not be placed with the child's parents by determining whether any one of the factors listed in R.C. 2151.414(E)(1)-(16) exists.

{¶ 17} Finally, if the above is resolved in favor of awarding permanent custody, the court must determine, under the second prong, whether permanent custody is in the best interest of the child based on, but not limited to, the five factors listed in R.C. 2151.414(D). Those factors include the following: (1) the interaction and interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply. R.C. 2151.414(D); *In re E.D.*, Cuyahoga App. No. 96096, 2011-Ohio-2800, ¶ 14. Only one of the above factors needs to be resolved in favor of awarding permanent custody. *In re A.M.*, 2008-Ohio-4454 at ¶ 28.

{¶ 18} The record demonstrates that the juvenile court considered all the applicable factors and that its award of permanent custody to CCDCFS was supported by clear and convincing evidence. The court considered the interaction and interrelationship of M.B. with his mother, relatives, and foster family; the custodial history of the child; M.B.'s need for

legally secure permanent placement and whether such placement could be achieved without a grant of permanent custody; and the report of the guardian ad litem.

{¶ 19} The juvenile court found that M.B. was not abandoned or orphaned and was not in the temporary custody of CCDCFS for 12 or more months during a consecutive 22-month period. Mother does not dispute this finding, and our focus, therefore, shifts to determining whether M.B. could be placed with mother within a reasonable time based on the factors enumerated in R.C. 2151.414(E).

{¶ 20} The juvenile court found that following the placement of M.B. outside the child's home, and notwithstanding reasonable case planning and diligent efforts by the agency to assist mother to remedy the problems that initially caused the child to be placed outside the home, mother failed continuously to substantially remedy the conditions that first caused M.B. to be placed outside the home; that the chronic emotional illness or chemical dependency of mother is so severe that it makes her unable to provide an adequate permanent home for M.B. at the present time and within one year from the date of the dispositional hearing; and mother had her parental rights terminated with respect to at least one of M.B.'s siblings and failed to show by clear and convincing evidence that notwithstanding the prior termination, she can provide M.B. a legally secure permanent placement and adequate care for the health, safety, and welfare of M.B. These findings comport with R.C. 2151.414(E)(1)-(2), (11), respectively.

{¶ 21} A review of the record demonstrates that since September 2008, mother cycled through a pattern of substance abuse and attempted rehabilitation, her latest attempt at rehabilitation occurring in January 2011 after being released from custody stemming from drug offense charges. Mother was initially referred to CCDCFS on substance abuse concerns. As of the March 2011 dispositional hearing, mother sought entry into her fourth substance abuse treatment program and attempted to reconnect with her mental health professional. Mother, however, attended only about 50 percent of her mental health appointments, most of which occurred because a representative from Help Me Grow personally drove her to the appointments. Both representatives from CCDCFS and Help Me Grow testified that mother had not been able to break her cycle of substance abuse despite the agencies' attempts to set up mother with reasonable treatment options. Mother never successfully completed a program and admitted to using drugs after M.B.'s birth.

{¶ 22} Mother has been arrested on drug-related charges on two occasions during M.B.'s short life and was unable to maintain a stable residence. She lived with brother for a period of time, interrupted by periods of incarceration on the drug offenses. Brother has not sought legal custody of M.B. and failed to ensure that M.B. was taken to the additional appointments necessitated by the autism and pica diagnoses. Thus, mother's chemical addiction has not been remedied and prevents her from providing an adequate permanent home for M.B. See R.C. 2151.414(E)(1)-(2).

**{¶ 23}** In addition, mother has not shown by clear and convincing evidence that, notwithstanding the prior termination of her parental rights for M.B.'s eight other siblings, she can provide a legally secure permanent placement for M.B. We note that as of the March 2011 dispositional hearing, mother obtained a satisfactory residence. Given the evidence that mother cycles through short periods of sobriety and attention to her mental health needs, the fact that she made efforts to finally comply with the case plan as of the date of the dispositional hearing does not clearly or convincingly demonstrate she can provide for M.B.'s needs notwithstanding the prior terminations. Coupled with the uncontroverted evidence that brother, the only other relative active in M.B.'s life, has alcohol or substance abuse problems and did not ensure M.B. received therapy pursuant to the case plan, we cannot say that mother can provide for a legally secure placement for M.B. Her cycle of persistent substance abuse and corresponding dealings with the court system demonstrates her inability to create a legally secure permanent placement for M.B. See R.C. 2151.414(E)(11). The above facts support, by clear and convincing evidence, the finding that M.B. could not be placed with mother within a reasonable time.

**{¶ 24}** Finally, having resolved the first prong in favor of awarding permanent custody to CCDCFS, we must consider whether awarding permanent custody is in the best interest of M.B. R.C. 2151.414(D). In making this determination, the juvenile court considered the factors listed in R.C. 2151.414(D), which included the interaction of the child with the parents,

siblings, relatives, and foster family; the wishes of the child as expressed through the guardian ad litem; the custodial history of the child; and the child's need for legally secure placement. Although not one of the court's findings, the trial court considered the guardian ad litem's report, which concluded that awarding permanent custody to CCDCFS was in M.B.'s best interest.

{¶ 25} The juvenile court found that mother had her parental rights terminated with respect to all eight of M.B.'s siblings and failed to prove, by clear and convincing evidence, that she could provide a legally secure, permanent placement for M.B. R.C. 2151.414(D)(1)(e); R.C. 2151.414(E)(11). Again, only one of the R.C. 2151.414(D)(1) factors need to be resolved in favor of awarding permanent custody. *In re A.M.*, 2008-Ohio-4454, at ¶ 28. As we already determined that mother failed to meet her evidentiary burden pursuant to R.C. 2151.414(E)(11), we find the trial court did not err in awarding permanent custody to CCDCFS as one factor, upon reviewing all relevant evidence, was resolved in favor of the decision. Mother's second assignment of error is overruled.

{¶ 26} The trial court's determination to award permanent custody to the agency was based on clear and convincing evidence, and the termination of parental rights was also not against the manifest weight of the evidence. The trial court did not abuse its discretion by granting permanent custody to CCDCFS as such action was required under R.C. 2151.414. The decision of the juvenile court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, J., CONCUR