[Cite as *In re H.A.I.*, 2012-Ohio-3816.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97771**

# IN RE: H.A.I., ET AL.

# (MINOR CHILDREN)

# [APPEAL BY FATHER]

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 07900116 and AD 04902623

**BEFORE:** Kilbane, J., Stewart, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** August 23, 2012

**APPELLANT**/**FATHER**

A.H.I., Pro Se
8209 Force Avenue
Cleveland, Ohio 44105

**APPELLEE/MOTHER**

D.B., Pro Se
3355 West 30th Street
Cleveland, Ohio 44109

**ATTORNEY FOR APPELLEE/CCDCFS**

Yvonne C. Billingsley
CCDCFS
3955 Euclid Avenue, Room 305E
Cleveland, Ohio 44115

**GUARDIAN AD LITEM**

Stephen DeJohn
1054 Nicholson Avenue
Lakewood, Ohio 44107

MARY EILEEN KILBANE, J.:

**{¶1}** Pro se appellant-father, A.H.I. ("appellant"), appeals from the order of the juvenile court that awarded legal custody of his children, H. I. and A. I., to their mother, D.B. For the reasons set forth below, we affirm.

**{¶2}** A.I. was born on September 14, 2004, in New York while the mother was visiting relatives. A.I. and her mother both tested positive for cocaine. Thereafter, officials in Monroe County, New York took emergency custody of A.I. and the mother's two other children, L.W., born in 1991, and E.W., born in 1995.[1] On December 17, 2004, the children were placed in the custody of CCDCFS. On December 21, 2004, A.I. was placed in the emergency care and custody of appellant. On August 11, 2005, the court awarded legal custody of A.I. to appellant.

**{¶3}** The mother entered drug treatment in January 2005. She later relapsed in 2006 while pregnant with H.I. In May 2006, the mother pled guilty to robbery and having a concealed weapon.[2] H.I. was born prematurely on August 3, 2006. At the time of H.I.'s birth, the mother tested positive for cocaine, methadone, and opiates, and H.I. was removed from her mother's care. At that time, appellant was alleged to be her father, but he had not established paternity. The Cuyahoga County Department of

---

[1]E.W. later resided with her father, but by the November 2011 trial, she was living with her mother.

[2]She was sentenced to five years of probation in that matter.

Children and Family Services ("CCDCFS") was awarded temporary custody of H.I. on May 16, 2007, and she was placed in foster care.

{¶4} On November 14, 2007, CCDCFS filed a motion to modify, seeking an award of permanent custody of H.I., alleging that the mother had chronic drug dependency issues, appellant had not visited with H.I. since her placement with the county, and appellant had not established paternity. At the time of CCDCFS's November 20, 2008 review of the matter, the agency noted that the mother had served six months in jail for passing bad checks and faced additional jail time in connection with the charges noted above. The report additionally noted, however, that the mother had been sober for approximately six weeks, had started drug treatment, attended weekly Alcoholics Anonymous meetings, was making progress in counseling, and was working. This report additionally noted that appellant had established paternity of the child and passed a drug screening, but had not been consistent with taking the child to speech therapy.

{¶5} On April 28, 2009, CCDCFS filed a motion to terminate the award of temporary custody of H.I. and to award legal custody to the mother, with protective supervision by CCDCFS for a period of six months. CCDCFS asserted that the mother has substantially complied with the case plan and "reduced the risk that caused the child to be removed." In a review dated May 18, 2009, CCDCFS noted that the mother had made "significant progress," and she has undergone random drug screenings that have been negative for drug use. On June 4, 2009, the guardian ad litem, Stephen DeJohn

("GAL"), advised the court that H.I. was doing well in foster care, but "mom is aware of and capable of providing for" H.I.'s needs, and "[m]om appears up to the task of being reunified with her child." The GAL recommended reunification of H.I. with her mother, "with protective supervision to the agency."

{¶6} A hearing was held on June 11, 2009, on CCDCFS's motion to modify temporary custody to an order vesting legal custody to mother with protective supervision by CCDCFS for six months. The magistrate's decision granting CCDCFS's motion was filed on June 18, 2009, and affirmed and adopted by the trial court on July 9, 2009.

{¶7} On August 16, 2009, a review of H.I.'s placement by social worker, Rebecca Botchway, noted phone calls to the father for a case plan update had not been returned.

{¶8} The record indicates that the mother was incarcerated for a short time following the August 16, 2009 review, and on February 22, 2010, appellant filed a motion to modify custody of H.I. On March 4, 2010, the magistrate awarded appellant temporary custody of H.I.

{¶9} On August 29, 2010, the mother moved to modify custody of A.I., arguing that appellant had denied her visitation with the child, and he has neglected A.I.'s health, educational, and emotional needs.

{¶10} On January 24, 2011, the GAL issued a report in which he noted that father has legal custody of A.I. and temporary custody of H.I., and the mother had weekly visitation with the girls. In relevant part, the GAL noted:

I met with my wards, two delightful and happy young girls. H.I., the younger, is well bonded with her older sister. She exhibits signs of a speech impediment which was dealt with in the past and she was released from care. * * * A.I. has always been in the legal custody of dad. She attends a charter school in downtown Cleveland, [and] appears bright and knowledgeable for her age.

Short of ensuring that mom obtains a standard visitation as is customary in this county, I see no reason to change custody of A. I. As to H.I., I recommend joint custody to both parents, with dad as residential parent.

{¶11} Following a hearing on June 1, 2011, the magistrate ordered appellant to "cooperate with [CCDCFS's] investigation to allow [CCDCFS] to interview child and visit his home." The parties also agreed to an interim visitation schedule whereby each parent had weekly alternating visitation with the two girls.

{¶12} On August 31, 2011, the GAL issued a follow-up report that provided in relevant part as follows:

Currently, dad has legal custody of A.I. and temporary custody of H. I.

This matter has been pending for a long time, as the case numbers indicate. There have been many ups and downs, mostly because of the hostility between the biological parents. Mom is single; dad is married under Islamic law. * * *

Dad is residential parent for both of my wards. Mom has weekly visitation on Saturdays. At my last report visitation was working out; since that time, mother has filed two Motions to Show Cause because Dad has failed to turn over the children for visitation. Mother had gone to his home with police and dad was non-responsive to the police inquiry.

The regular contentiousness that is exhibited between the parents is a source of grave concern for my wards, in view of psychologist Dr. Ezzo's recent evaluation and report. He cites studies that show less stress on children in shared parenting situations than those with sole custody to one parent. As a result, I recommend strongly a shared parenting arrangement for my wards. While I do not advocate changing the children's living site every

week, which would create its own set of new stresses, perhaps the solution to this dilemma is one month at a time with each parent. School arrangements will have to be worked out between the parents[.]

**{¶13}** Both parents' motions for legal custody of H.I. and A.I. proceeded to trial before a magistrate on November 2, 2011. Jeanette Morris, H.I.'s foster parent from 2006 to 2009, testified that when the mother was released from incarceration in 2007, she told Morris that she wanted to turn her life around and asked Morris for her support. Since that time, according to Morris, the mother has gotten her "life together."

**{¶14}** Morris further testified that, in the summer of 2010, she assisted the mother with picking up the girls for visitation. On the first visit, she stated that it was just H.I., who was then four years old. She was missing a tooth, and her clothes were soaked in urine. Morris also described the mother's visit with both A.I. and H.I. that summer. She stated that A.I. "knew that [H.I.] was her sister, but she did not know how they were connected," and that family members told A.I. that she did not have a mother because her mother was dead.

**{¶15}** According to Morris, H.I. "has been dirty ever since she's been with [Appellant]" and wore the same jeans, shirt, and dirty coat each time her mother has picked her up for visitation. She further stated that A.I. is "a bit more cleaner," and that mother "keeps the kids immaculate."

**{¶16}** During a visit with the girls in January 2011, Morris and the mother purchased toys for H.I., but the child later told Morris that appellant's new wife threw the toys into a dumpster near their house.

**{¶17}** Morris also testified that H.I. told her that she had gotten suspended from school, and that appellant punished her by beating her with a cane. Morris stated that A.I. is "afraid" of appellant and "dry heaves" if she does anything wrong.

**{¶18}** On cross-examination, Morris denied that she deprived appellant of visitation with H.I. during the time that she was in her care. She also admitted that she has no direct knowledge of whether appellant has multiple wives, but she testified that the girls informed her that he has three wives.

**{¶19}** The CCDCFS social worker, Rebecca Botchway, testified that she has been working with this family since 2004, after A.I. was born, and that the mother has had parenting issues because of her drug use and past criminal history. Over time, however, the mother has made significant progress. She has been sober for 18 months, cooperates with all recommendations for herself and H.I., and is employed.

**{¶20}** In addition, according to Botchway, H.I.'s teachers have expressed concerns for her cleanliness, and have reported that she does not complete school work, and does not receive assistance with her homework in appellant's home. She is failing social studies and Spanish, and she is at risk of failing. The teachers also informed Botchway that they had met appellant only a week earlier, and that he has not provided them with information concerning her medical and dental coverage. Botchway further testified that she learned that H.I. threatened a boy at school with a pair of scissors and was suspended. For her punishment, appellant hit her with a bamboo stick. She also testified that both girls appear disheveled and unkempt while with appellant, and that H.I.'s teacher stated

that she usually comes to school in dirty clothing. Botchway did not speak with A.I.'s teacher.

{¶21} Botchway acknowledged that, after A.I. was removed from the mother's custody, the mother was referred to drug court; however, she did not successfully complete her treatment. She further acknowledged that appellant was awarded legal custody of A.I., and that CCDCFS obtained temporary custody of H.I. after she was born. At that time, appellant denied paternity, and the child lived in foster care with Morris. After paternity was established through a DNA test, appellant filed a motion for custody of H.I., but he has refused numerous requests to complete the required Kinship Care Packet, which entails having all adults in the home fingerprinted and having the home inspected for safety issues. For that reason, CCDCFS cannot support his efforts to obtain custody of H.I. Botchway was not certain whether completion of the packet was not required when appellant obtained custody of A.I. Appellant also informed Botchway that the girls receive medical care at MetroHealth Hospital, but after checking there, Botchway received no information about their care. CCDCFS has received allegations that appellant had neglected to obtain medical treatment for H.I. who has asthma.

{¶22} Botchway also testified that the mother was initially unemployed but in the last few months has been hired to clean apartments and show them to prospective tenants. According to Botchway, the mother "made a remarkable change and turnaround in her behaviors, and she is sober today."

**{¶23}** Tahirah Mujahid testified that he is the lead wrap-around specialist for the Hough/Heights Community. He works in partnership with CCDCFS and teaches parenting classes. He provided assistance to the mother in meeting the goals of the parenting plan. Mujahid stated that the mother was compliant with that plan, participates in sobriety meetings, has volunteered with his organization, and even received an award for her volunteer work.

**{¶24}** Appellant presented the testimony of his wife, Shirley Dancy ("Dancy"). Dancy stated that she married appellant in 2007 under Islamic law but did not obtain a marriage license. She testified that A.I. has resided with her and appellant since she was a baby, and that she takes care of H.I. and her husband's other children. Dancy testified that she cooks for the children, washes their clothes, braids their hair, helps them with their homework, and engages in various recreational activities with them. She denied that they are unkempt, attend school in dirty clothing, and that school officials had complained about the girls' cleanliness. She admitted, however, that A.I. still "has accidents," and that H.I. once had an accident at school and her mother brought her clean clothing. Dancy further testified that she and appellant discipline the children through time outs and sometimes spank them.

**{¶25}** Appellant testified that he married the mother of A.I. and H.I. under Islamic law, but it was not a state-sanctioned marriage. He stated that A.I. was born in New York, and that New York authorities took custody of the child immediately after her birth because of a positive drug test for the infant. Several months later, he was awarded

custody of A.I. He stated that mother did have visits with A.I., and he wanted her to have a relationship with the child, but that she had drug-related issues.

{¶26} Appellant next testified that he did not immediately comply with the request of CCDCFS to establish paternity of H. I. because he was unsure if he was her father, and he did not know that the county had taken custody of her. He established paternity after learning that the foster mother was going to adopt H.I. He testified that he completed the fingerprinting required under the Kinship Care package, but he claimed that the county then lost this portion of the package and his attorney informed him that he did not need to provide this information because he is H.I.'s biological father. He also testified that he did not refuse to provide the county with his address, but that he did not want the mother to know where he lived because she had previously made false allegations against him and he feared that she may cause problems for him.

{¶27} Appellant also stated that H.I. lost a tooth because of a fall that occurred at Morris's house. He denied that the girls are dirty or unkempt and stated that he buys her clothing and also gives the mother money for her clothing. He admitted that there had been problems in arranging visits with H.I., but he stated that they were the result of the mother not being available at the appointed time and the foster mother refusing to transport H.I. He denied telling A.I. that her mother is dead, and also denied that he has multiple wives. He did acknowledge that the children refer to another adult woman in the home as "mother," that he has had four Muslim marriages, it is permissible to be married to more than one woman at the same time, and one may obtain a divorce by

simply writing or announcing it. He acknowledged that the forms he provided to the school do not identify the mother, but he stated that this was because the mother is not the residential parent of the girls.

**{¶28}** Appellant also claimed that the girls were molested while with the mother, but that "this has been swept under the rug" by the county. He stated that he has five children and that he takes them to MetroHealth Hospital when they are ill or need a dentist. He denies treating A.I. differently than H.I., but he explained that he responds to them differently based upon their different temperaments. He admitted that H.I. initially did well in school, but then began to do poorly. He stated that this was the result of the suspension.

**{¶29}** On November 4, 2011, the magistrate conducted in camera interviews of the girls with the GAL present. The GAL informed the court that he met with the girls' teachers on the previous day. He stated that A.I. is in first grade, and H.I. is in kindergarten. He further stated that A.I. is getting decent grades, but that she has behavioral issues and is coming to school dirty. H.I.'s teacher informed him that her clothes do not appear to have been laundered, and on one occasion, the teacher "found fleas on her[.]" The girl "comes to school dirty all the time [and] smells * * *. [H]er lunches are inadequate . * * * It was a sandwich. * * * [T]here's no vegetable, there's no drink." Her teachers also informed the GAL that for two months, H.I. ate her lunch on the way to school in the morning and, therefore, she had nothing to eat at lunchtime. H.I. does not know her numbers, and forms provided by appellant listed the stepmother's

information but did not identify the mother. The GAL stated that he was concerned that the girls were not getting proper care at appellant's house.

{¶30} The GAL stated that appellant explained that H.I. generally arrives at school in time to eat breakfast there, but while on the bus, she has eaten the lunch sent with her. Her brother now takes the lunch and gives it directly to the teacher. Appellant also acknowledged that she has soiled herself, but he explained that it happened while she was on the bus and not at his home. He also explained his efforts in dealing with the fleas carried by the family's pets.

{¶31} On November 8, 2011, the magistrate issued a decision finding that it is in the best interest of H.I. and A.I. that the mother be designated residential parent and legal custodian, and that appellant have visitation every other weekend. In relevant part, the magistrate found:

> Results of In-Camera Interview with the child, information received from the child's teacher and school officials, specifically mother's allegations that the child is unclean were substantiated by school officials. Further concerns were raised as to the child being properly fed and having sufficient lunch. The school official also advised Social Worker that they do not have updated medical and dental information for the child. School officials had never met the father prior to October 21, 2011. Further, on the morning of the In-Camera Interview, the Court learned the child had not been given breakfast and that her lunch that she takes to school consists of a sandwich only, there is no drink, fruit or vegetable included in the lunch. The Court also gave consideration to each parents' living arrangement and the number of people in each household interacting with the child on a daily basis. Father was not forthcoming when asked about his marriages and how many children he has. * * * Social Worker learned from the child that she had been hit with a bamboo stick. When interviewed separately, sibling confirmed that account. Father acknowledged [administering such punishment and] believes such discipline is acceptable. * * * Father has not been cooperative with the worker in completing her ongoing

investigation. CCDCFS Worker was not able to gain access to the father's home to speak with the child. CCDCFS Worker has investigated the mother's home and found it to be appropriate as the mother is able to meet the child's basic needs. Mother has been clean and sober for more than eighteen (18) months. Social Worker does not believe the mother is a threat to the health and safety of the child. The foregoing demonstrates to the Court that the child's basic needs are better met in the custody of the mother.

{¶32} On November 28, 2011, the trial court approved and adopted the magistrates' decision.

{¶33} Appellant now appeals, assigning six errors for our review.[3]

{¶34} The following assignments of error are interrelated as they challenge the award of legal custody of A.I. and H.I. to the mother and provide:

ASSIGNMENT OF ERROR ONE

The trial court abused its discretion in giving residential parenting and legal custody to defendant [D.B.] due to [her] vast criminal activity.

ASSIGNMENTS OF ERROR TWO AND THREE

The trial court erred [and committed] an abuse of discretion by naming an habitual drug user residential parent and legal custodian not in the best interest of the [children].

ASSIGNMENT OF ERROR FOUR

---

[3]Appellant raises seven assignments of error, however, the second and third assignments of error are identical, and therefore, we recite it only once herein.

The trial court erred and abused its discretion in assessing defendant-appellee's ability to care for the children.

ASSIGNMENT OF ERROR SEVEN

The trial court erred and abused its discretion when it did not give residential parenting and legal custody to the father appellant.

{¶35} Within these assignments of error, appellant asserts that the trial court erred in awarding the mother legal custody of A.I. and H.I. in light of the mother's history of drug dependency, her criminal record, and her limited income. He maintains that it is in the children's best interest for him to be designated their legal custodian.

{¶36} "Legal custody" is defined by R.C. 2151.011(B)(21) as follows:

[A] legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

*See In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971.

{¶37} Thus, unlike permanent custody, when a parent loses legal custody of a child, he or she retains certain residual parental rights and also retains the right to request return of legal custody in the future. *In re Nice*, 141 Ohio App.3d 445, 455, 2001-Ohio-3214, 751 N.E.2d 552 (7th Dist.).

{¶38} Once a child is adjudicated abused, neglected or dependent, a juvenile court may award legal custody of the child to any parent or person who files a motion requesting legal custody. R .C. 2151.353(A)(3). A trial court must determine the appropriateness of legal custody in accordance with the best interest of the child as

supported by the evidence presented at the dispositional hearing. R.C. 2151.415; *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188.

{¶39} R.C. 2151.414(D) sets forth the following factors to be considered in making a best-interest-of-the-child determination:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11)[4] of this section

apply in relation to the parents and child.

---

[4]These additional factors include: whether a parent has continuously and repeatedly failed to substantially remedy the conditions causing the child to be placed outside the child's home, and has utilized available resources; whether a parent has chronic chemical dependency that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time; whether the parent has been convicted of or pleaded guilty to certain listed offenses (which are offenses of violence, sex offenses or offenses against children); whether the parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food; whether the parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times; whether the parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child; whether the parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child.

{¶40} On appeal, we will not reverse an award of legal custody absent an abuse of discretion. *In re Nice*, 141 Ohio App.3d 445, 455, 2001-Ohio-3214, 751 N.E.2d 552 (7th Dist.). If the court's decision on the children's best interests regarding legal custody is not supported by competent, credible evidence, then it is unreasonable and may be reversed. *Id.*; *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus ("[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court").

{¶41} In this matter, appellant raises concerns about the mother's prior criminal record. The record indicates that she tested positive for cocaine, methadone, and opiates, has a drug problem, and her three other children have been removed from her care. In addition, in May 2006, the mother pled guilty to robbery and having a concealed weapon. The mother was forthright about her history and her offenses were not of such a magnitude that they disqualified her from obtaining legal custody. *See In re S.D.*, 8th Dist. No. 97322, 2012-Ohio-2299 (father's aggravated murder and other offenses disqualified him from obtaining legal custody, and he and his family deceived the agency about the father's record in order to obtain legal custody of the child). Also, these offenses, though extremely relevant to the consideration of the best interest of the child, do not disqualify the mother from having legal custody of her daughter pursuant to R.C. 2151.414(D).

{¶42} Significantly, the record further indicates that at the time of the hearing, the mother had made significant progress in turning her life around. Although the mother unsuccessfully entered drug treatment prior to the birth of H.I., and relapsed during the pregnancy, as of the date of the hearing, the mother had been sober for 18 months and was in compliance with her case plan. She was employed, and she also received an award for volunteering at Mujahid's Hough/Heights Community facility.

{¶43} Moreover, although the mother had drug-related and other issues in the past, she has shown remarkable progress. The record presented at the hearing also indicated that the mother provides consistent care for the girls, gives them sufficient food, clean clothes, appropriate medical care, and help with schoolwork. The record establishes that the trial court conducted in camera interviews with A.I. and H.I., and carefully considered their relationships with their parents, siblings, other parental figures, and teachers. The court noted longstanding and serious concerns about the children's meals, cleanliness, clothing, and schoolwork while in the care of appellant. The record clearly indicates that appellant has not completed the required Kinship Packet, which involves fingerprinting the adults in the home and a safety inspection, and there were unanswered questions about his living arrangements.

{¶44} With regard to the issue of the mother's finances, appellant complains that she has insufficient means to care for the girls because she receives $674 per month in Social Security and pays $600 for rent. There is no evidence in the record as to these

sums.  The record clearly indicates, however, that the mother receives public assistance for food and housing, and has begun part-time employment.

**{¶45}** Based on the evidence presented, there is substantial competent and credible evidence to support the judgment of the trial court.  Therefore, the trial court did not abuse its discretion in rendering its award of legal custody herein.

**{¶46}** These assignments of error are overruled.

## ASSIGNMENT OF ERROR FIVE

> The trial court erred [and abused] its discretion by leaning heavily on a very vague report by the guardian ad litem and not adhering to the initial and specific custody recommendation in favor of the father * * *.

**{¶47}** Pursuant to R.C. 2151.281, a trial court must appoint a GAL "to protect the interest of a child in any proceeding concerning an alleged abused or neglected child and in any [permanent custody proceeding]." R.C. 2151.281(B)(1).  The GAL is an investigator for the court.  *In re A.L.*, 6th Dist. No. L-10-1355, 2011-Ohio-2569.  Pursuant to R.C. 2151.281(I), the GAL must "perform whatever functions are necessary to protect the best interest of the child."  Those functions include: "investigation, mediation, monitoring court proceedings, and monitoring the services provided the child" by the public or private agency having custody of the child and filing "any motions and other court papers that are in the best interest of the child." *Id.*

**{¶48}** Ohio courts have held that a trial court may consider the report of a court-appointed investigator despite the hearsay inherent in such a report. *In re A.L.* To protect the parties' due process rights, however, the trial court must make the guardian ad litem available for direct and cross-examination. *Id.*

**{¶49}** Finally, we note that the admission of evidence lies within the broad discretion of the trial court. *In re M.B.*, 8th Dist. No. 96724, 2011-Ohio-4645. A reviewing court will uphold an evidentiary decision absent an abuse of discretion that has affected the substantial rights of the adverse party or is inconsistent with substantial justice. *Id.*

**{¶50}** In this matter, we conclude that the trial court did not abuse its discretion in considering the report and statement from the GAL. In his role as the investigator for the court, the GAL investigated the girls' condition, functioning at school, and the care provided by the parents. The GAL advised the court on June 4, 2009, that H.I. was doing well in foster care, but "mom is aware of and capable of providing for" H.I.'s needs, and "[m]om appears up to the task of being reunified with her child." The GAL recommended reunification of H.I. with her mother, "with protective supervision to the agency." On November 4, 2011, the GAL informed the court that on the previous day, he met with teachers at the girls' school who expressed concerns about A.I.'s behavior, H.I.'s cleanliness, and meals provided by appellant. School officials also informed him that forms provided to the school by appellant did not identify the mother in school documentation, and H.I.'s teachers stated that she does not know numbers. The GAL

stated that he was concerned that the girls were not getting proper care at appellant's house.  In short, the GAL fulfilled his proper function in advising the court of the best interest of the children.

{¶51} This assignment of error is without merit.

## ASSIGNMENT OF ERROR SIX

The trial court erred [and abused] its discretion by falsely depicting Rebecca

Botchway as the social worker falsely factoring in her personal opinion as

that of a professional opinion.

{¶52} Initially, we note that a trial court has broad discretion in admitting or excluding evidence and, absent an abuse of discretion and a showing of material prejudice, a trial court's ruling on the admissibility of evidence will be upheld.  *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985).

{¶53}  Evid.R. 602 provides as follows:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony.  This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.

{¶54} In addition, this court has specifically recognized that a social worker is competent to testify to the contents of the agency's case file pursuant to Evid.R. 803(6) (hearsay exception for records kept in the ordinary course of business) and Evid.R. 803(8)(hearsay exception for public records and reports that set forth the activities of an agency or office and contain matters observed which, pursuant to a duty of law, i.e., R.C.

5153.17, the agency has a duty to report). *In re J.T.*, 8th Dist. Nos. 93240 and 93241, 2009-Ohio-6224. Here, the record reveals that the social worker has been working with the family since 2004, and that she has participated in the many CCDCFS reviews of this matter. She testified that the mother has made significant progress, has been sober for 18 months, cooperates with all recommendations, and is employed. Botchway also testified that she has met with H.I.'s teachers and they have expressed concerns about the meals provided by appellant as well as his disciplinary methods. She learned that H.I. is frequently unkempt, does not complete school work, and is at risk of failing. Botchway also informed the court that the appellant did not complete the services requested by CCDCFS and has refused numerous requests to complete the required Kinship Care Packet. From all of the foregoing, the record clearly demonstrates that Botchway had first-hand knowledge about H.I. and her parents, and she was competent to testify about the case file and the matters on which she had a duty to report. The trial court did not abuse its discretion in accepting her testimony.

{¶55} This assignment of error is without merit.

{¶56} Finally, insofar as appellant additionally complains that the trial court abused its discretion in awarding him every-other weekend visitation, we find no abuse of discretion. *Berger v. Lu-Jean Feng*, 8th Dist. No. 96513, 2012-Ohio-1041 (every other weekend visitation not an abuse of discretion).

{¶57} Judgment affirmed.

It is ordered that appellant pay costs herein taxed.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas - Juvenile Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MELODY J. STEWART, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR